**Sue Ann ROUSH, Plaintiff–Appellant,**

v.

**WEASTEC, INC., Defendant–Appellee.**

No. 95–3738.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1996.

Decided Sept. 25, 1996.

Sharon J. Sobers (argued and briefed), Tobias, Kraus & Torchia, Cincinnati, OH, for Plaintiff-Appellant.

William W. Ford, III (argued and briefed), Frost & Jacobs, Cincinnati, OH, for Defendant-Appellee.

Before KENNEDY, WELLFORD, and SILER, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Sue Ann Roush appeals the order of the District Court granting summary judgment to defendant, Weastec, Inc., in this action alleging violations of the Americans with Disabilities Act ("ADA"), the Employee Retirement Income Security Act ("ERISA"), and the Ohio Civil Rights Act. For the

reasons stated, we AFFIRM in part, and REVERSE in part.

## I. Facts

Plaintiff began working for Weastec in October of 1990. In January of 1991, she began a medical leave of absence and underwent a pyeloplasty to remove an obstruction from her kidney. Although plaintiff returned to work after this kidney operation, she continued to suffer from her kidney condition and underwent a number of medical procedures. Due to this condition and other medical problems, she worked less than ten weeks during 1991 and less than ten weeks in 1992.

When plaintiff returned to work in early 1992, she alleges that the human resources manager informed her that he did not believe that she was sick and that she had undergone all of the medical procedures she claimed. When plaintiff attempted to explain her medical problems, she claims that the human resources manager told her that she was "just a liability" and that the company was "getting nothing back" from her and that if she took medical leave again her employment would be terminated.

In 1993, plaintiff continued to suffer from her kidney condition and underwent a second pyeloplasty, which corrected her kidney condition. Plaintiff remained unable to work for a period of three months after this surgery but returned to work at the end of September of 1993.

At the same time she was experiencing kidney problems, plaintiff also began experiencing recurring bladder inflammation, which her doctor at the time diagnosed as, and her current doctor suspects is, interstitial cystitis, a chronic bladder inflammation that results in pain and intermittent bladder infections. She alleges that this condition causes sharp pains in her bladder, extreme tenderness in her pelvic area, a constant feeling of needing to urinate, an inability to control urination, and a fever. During her deposition, plaintiff also testified that this condition restricts the amount of weight she can lift, prevents her from running, and makes it painful for her to stand or sit for extended periods of time.

Around July of 1992, plaintiff's doctor recommended that she undergo a series of six bi-monthly RIMSO treatments, which involve injecting a chemical through a catheter into the bladder, to treat her bladder condition. Plaintiff alleges she requested vacation days and excused days of absence for this medical treatment, both of which she was denied. Because she was denied excused time off, she contends she was forced to take unexcused time off to get the treatment and, as a result, was subject to discipline.

At some point during plaintiff's employment, Weastec switched health insurance providers to control its premiums so that Weastec could continue to provide its employees with health insurance at no expense to them. A representative of the new health insurance company presented information to all associates describing the premium reduction that would accompany a switch to the new plan. To illustrate this, the representative anonymously listed the amounts of Weastec's ten highest claims in the prior year; one of these claimants was allegedly the plaintiff.

Plaintiff brought this action against Weastec, Inc., claiming that defendant wrongfully discriminated against her, harassed her, interfered with her exercise of medical benefits and intentionally inflicted upon her emotional distress in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq., the Employment Retirement Income Security Act, 29 U.S.C. § 1140, and Ohio Revised Code § 4112.02(A).

The District Court granted defendant's motion for summary judgment. With respect to plaintiff's claim under the ADA, the District Court reasoned that because plaintiff's kidney is no longer obstructed and because her bladder infections are not chronic, and instead are only intermittent and recurrent, neither condition is a disability within the meaning of the ADA. Further, the District Court held that defendant was entitled to summary judgment on plaintiff's ERISA claim, finding no evidence from which a reasonable jury could conclude that Weastec intended to interfere with her rights under an ERISA-protected plan. Finally, given its dismissal of plaintiff's federal claims, the Dis-

trict Court declined to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff appeals from this order of summary judgment.

## II. Discussion

### A. Standard of Review

■ We review a grant of summary judgment de novo. *Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir. 1990). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. Plaintiff's ADA Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity" and "denying employment opportunities to a[n] ... employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(A).

■ To prevail on her ADA claim, therefore, Roush must prove that (1) she has a disability; (2) she was qualified for the job; and (3) she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made solely because of her disability.

*See Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 763 (5th Cir.1996); *Doe v. University of Maryland Medical Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995).

■ Plaintiff first argues that the District Court's holding that she was not disabled within the meaning of the ADA was erroneous. Therefore, we first consider the question of whether a genuine dispute of material fact exists with regard to whether Roush was disabled within the meaning of the ADA.

The ADA defines a disability to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The regulations define "physical or mental impairment" as "[a]ny physiological disorder, or condition" affecting one or more of various body systems, including the genito-urinary system. 29 C.F.R. § 1630.2(h)(1) (1995). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1995).

■ Finally, the term "substantially limits" means inability to perform, or a severe restriction on the ability to perform as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1) (1995). The determination of whether an impairment substantially limits a major life activity requires a consideration of "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (1995). Generally, short-term, temporary restrictions are not substantially limiting. *See Hamm v. Runyon,* 51 F.3d 721, 725 (7th Cir.1995); 29 C.F.R. pt. 1630, app. at 402 (1995).

Plaintiff claims that her kidney and bladder conditions substantially limit her major life activity of working such that she has a disability under the ADA. She claims that each of these conditions alone qualifies her as an individual with a disability within the meaning of the ADA and that they may also

be considered together so that, as a unit, a disability exists.

First, plaintiff suggests that her kidney condition is severe and the duration of the impairment is life-long as it is a congenital condition. Although her kidney condition currently appears to be corrected, plaintiff argues that because there is no proof that a kidney blockage will not recur or that further surgery will not be needed, her kidney condition renders her an individual with a disability within the meaning of the ADA.

We conclude, as did the District Court, that plaintiff's kidney condition does not constitute a disability within the meaning of the ADA. We do not doubt that the plaintiff suffered from a kidney condition and had a physical impairment. *See* 29 C.F.R. § 1630.2(h)(1) (1995). However, there is no evidence that this impairment presently substantially limits a major life activity within the meaning of the ADA. Although plaintiff underwent a number of surgeries and medical procedures to correct her condition and her ability to work was substantially limited during that period, this does not necessarily lead to the conclusion that plaintiff presently has a disability. Instead, it is undisputed that plaintiff's kidney is no longer obstructed and no longer affects her ability to work. Because plaintiff's kidney condition was temporary, it is not substantially limiting and, therefore, not a disability under the ADA. Further, the mere possibility that a kidney blockage will recur or that further surgery will be needed is not sufficient to establish that her condition is substantially limiting. *See Katz v. City Metal Co., Inc.*, 87 F.3d 26, 32 (1st Cir.1996).

■ Plaintiff, however, also claims that her bladder condition constitutes a disability within the meaning of the ADA. According to the deposition testimony of plaintiff's doctor, interstitial cystitis involves chronic bladder inflammation. Instead of considering whether plaintiff's bladder condition constitutes a disability, the District Court considered only whether her bladder infections constitute a disability. Defendant has conceded that plaintiff's bladder condition is a physical impairment. The bladder infections, though intermittent and temporary, are a characteristic manifestation of this physical impairment and, thus, are a part of the underlying impairment. *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir.1995). In that plaintiff does suffer from a physical impairment, we proceed to consider whether plaintiff has presented evidence that creates a question of fact on the issue of whether her bladder condition, including the bladder infections, substantially limits one of her major life activities.

During her deposition, plaintiff testified that this condition causes her substantial pain such that she can not engage in a major life activity, work, without medication. Even with medication, plaintiff claims she suffers pain. Further, plaintiff's doctor testified that she visits his office monthly or semi-monthly for the treatment of infections and pain caused by this condition. We conclude, therefore, that plaintiff has created an issue of material fact as to whether her bladder condition substantially limits her working. Accordingly, we remand this claim to the District Court for consideration of whether defendant is nonetheless entitled to summary judgment,[1] or, alternatively, for a trial on the merits of plaintiff's ADA claim based on her bladder condition.

## C. Plaintiff's ERISA Claim

Next, plaintiff claims that the District Court erred when it granted defendant summary judgment on her ERISA claim. She maintains that Weastec violated § 510 of ERISA by harassing her in an attempt to discourage her from using the company's medical benefit plan. Section 510 of ERISA provides in part that

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of

---

1. The District Court may grant summary judgment in favor of the defendant if it finds that plaintiff has not presented evidence that shows that there is a genuine issue of fact as to whether she was qualified for the job, whether plaintiff was subject to an adverse employment decision on account of her bladder condition, or whether defendant failed to reasonably accommodate her.

an employee benefit plan, ... or the Welfare and Pension Plans Disclosure Act, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. ...

29 U.S.C. § 1140.

■ To avoid summary judgment on a § 510 claim, an employee must show that the employer engaged in prohibited conduct for the purpose of interfering with the employee's attainment of any right to which he may become entitled under an ERISA-protected plan. *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir.1996); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). The plaintiff must demonstrate that the employer engaged in the prohibited conduct with the *specific intent* of violating ERISA. *Humphreys*, 966 F.2d at 1043.

■ The District Court suggested that since plaintiff did in fact obtain extensive medical benefits under Weastec's health benefits plan and was never denied reimbursement, a reasonable jury could not find that Weastec engaged in prohibited conduct with the specific intent of violating ERISA. However, the statute indicates only that the plaintiff must prove that the defendant engaged in conduct for the purpose of interfering with his rights, not that the employer's conduct actually had the effect of interfering with his rights. Other courts have recognized that a plaintiff's receipt of ERISA-protected benefits does not preclude an ERISA claim under § 510. *See, e.g., Kowalski v. L & F Prods.*, 82 F.3d 1283, 1287 (3d Cir.1996) (holding that an employee who claims to have been terminated by her employer for having exercised her right to disability benefits raised a cognizable claim under § 510 of ERISA notwithstanding the fact that she received the benefits from her employer prior to termination); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th Cir.1989) (suggesting that a plaintiff may establish a violation of § 510 of ERISA by demonstrating that his prior use of benefits motivated his discharge), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990). Therefore, the fact that plaintiff actually received benefits is not fatal to her § 510 claim.

Plaintiff refers this Court to a number of events that she claims evidence defendant's intent to interfere with her rights under the ERISA-protected plan. These events include: (1) the human resources manager's statement that subsequent medical leave would result in her termination; (2) the human resources manager's statement that plaintiff was a liability to Weastec; and (3) the defendant's change of insurance carrier and the new provider's listing of large benefit claims to demonstrate Weastec's anticipated savings under the new plan. We consider whether each event evidences defendant's intent to interfere with plaintiff's rights under the ERISA-protected plan.

■ The human resources manager's statement that subsequent medical leave would result in plaintiff's termination simply advised plaintiff that her use of medical leave exceeded normal limits; he did not advise her to refrain from exercising her rights under the plan. In addition, his statement that she was a liability to Weastec was simply a statement of what was self-evident; at that time, plaintiff had been employed by defendant for over fifteen months but had actually worked less than four months during which period defendant was paying her medical expenses. After those statements, plaintiff continued to miss considerable time from work and incurred substantial medical expenses. Therefore, we conclude that the human resources manager's statements are not evidence of defendant's intent to interfere with plaintiff's rights under the ERISA-protected plan.

■ Finally, defendant's change of insurance carrier and related employee informational meeting do not evidence defendant's alleged specific intent to interfere with plaintiff's use of medical benefits. Instead, they evidence defendant's desire to continue to provide medical benefits to its employees at no cost to the employees.

Because we find that plaintiff has failed to adduce evidence that suggests that defendant specifically intended to interfere with her rights under an ERISA-protected plan, we affirm the District Court's grant of summary

judgment in favor of defendant on plaintiff's ERISA claim.

### D. Plaintiff's Pendent State Claims

Finally, the District Court is directed to reinstate plaintiff's state law claims pending its determination of plaintiff's ADA claim.

### III. Conclusion

For the reasons stated, we AFFIRM the dismissal of plaintiff's ADA claim based on her kidney condition, REVERSE the dismissal of her ADA claim based on her bladder condition, AFFIRM the dismissal of her ERISA claim, and REINSTATE her pendant state claims pending the disposition of her federal claim. Accordingly, we REMAND to the District Court for further proceedings consistent with this opinion.