David P. GANDELMAN, Plaintiff,

v.

AETNA AMBULANCE SERVICE, INC., Jean S. Grady, and Stanley Sheades, Defendants.

No. 3:97CV0212(GLG).

United States District Court, D. Connecticut.

May 10, 1999.

Peter T. Evans, Appleton & Appleton, Hartford, CT, for Plaintiff.

Kenneth I. Friedman, Marc P. Mercier, Drew S. Graham, Beck & Eldergill, Manchester, CT, for Defendants.

### Memorandum Decision

GOETTEL, District Judge.

Plaintiff, David P. Gandelman, has filed a three-count complaint against his former employer, Aetna Ambulance Service, Inc., ("AASI"), and two of its officers and directors, alleging that they violated section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, by terminating him in order to remove him from coverage under AASI's group health insurance plans. (Pl.'s Compl. at ¶ 19). Plaintiff has also asserted state-law claims for intentional infliction of emotional distress and wrongful discharge. Defendants

now move for summary judgment on all counts. Finding that plaintiff has failed to state a claim upon which relief may be granted under ERISA, this Court grants defendants' motion for summary judgment [**Doc. # 17**] on Count I. As to the remaining state-law counts, the Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c)(3), and dismisses them without prejudice.

## DISCUSSION

### Summary Judgment Standard

A motion for summary judgment may not be granted unless the Court determines, when viewing the record in the light most favorable to the nonmoving party, that the evidence offered demonstrates that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(c) provides that the mere existence of "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). The materiality of a particular fact is determined by reference to the substantive law of the case. *Id.* at 248, 106 S.Ct. 2505. A "genuine" dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The burden of demonstrating the absence of a genuine dispute as to a material fact rests with the party seeking summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Mat-sushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must come forth with specific facts showing that there is a genuine issue for trial. *Id.*

### Facts

Plaintiff had been employed by AASI since February 1989. Initially, he was hired on an independent contractor basis to service and repair vehicles used by AASI in its ambulance business. In 1992 or 1993, his status was changed to that of an employee of AASI. During that time, plaintiff was promoted to Director of communications for AASI. He also continued to work as a mechanic for AASI. Plaintiff claims that he had a satisfactory performance record and, for purposes of this motion, defendants do not dispute that plaintiff was qualified for his position. (Def.'s Mem. at 12 n. 3).

In February, 1994, plaintiff was terminated. Defendants claim that this termination was the result of their discovering that certain items of company equipment were missing after numerous employees reported that they had seen plaintiff removing AASI equipment from storage and placing it in his personal automobile. Plaintiff adamantly denies that he took anything belonging to defendants, and for purposes of this motion, we will assume that plaintiff was wrongly accused.

During plaintiff's employment with AASI and to a greater degree toward the end of his employment, plaintiff was suffering from diabetes, heart problems, and serious kidney problems. Defendants were at least generally aware of his health problems, and, just prior to his termination, plaintiff claims that defendants were made aware of the fact that he would be taking a stress test as part of a pre-operative work-up for a kidney transplant.

At the time of plaintiff's termination, he was covered under AASI's group medical plan with M.D. Health Plan, Inc. Not long

after his termination, plaintiff learned through his fiancee (who was also employed at AASI and later became plaintiff's wife) that someone in management told her that he had been trying to obtain less expensive health insurance for AASI employees, but that three companies had declined to offer coverage because of plaintiff's health.

On or about February 21, 1994, pursuant to the terms of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), plaintiff elected to continue at his own cost the medical insurance coverage formerly provided to him by AASI. On or about July 1, 1994, AASI terminated its group health coverage with M.D. Health and installed Interactive Benefits Corporation ("IBC") as the third-party administrator for AASI's self-insured group health plan. In November, 1994, plaintiff began self-dialysis for his End Stage Renal Disease, at which point he became eligible for medical benefits under Medicare. *See* 42 U.S.C. § 426–1. In accordance with the provisions of the IBC Plan, his COBRA coverage with IBC was then terminated.

### The Positions of the Parties

Defendants argue that they are entitled to summary judgment on plaintiff's ERISA claim because defendants' discharge of plaintiff and subsequent termination of COBRA coverage by IBC do not give rise to an inference of discrimination. In addition, they assert that plaintiff's alleged loss of benefits was a mere consequence of his termination of employment, not a motivating factor behind it. Finally, they argue that because plaintiff cannot establish the existence of any vested or accrued rights that he has in AASI's group health plans, his ERISA claims must fail as a matter of law.

Plaintiff responds that "it may be reasonably inferred that defendants knowingly falsely accused plaintiff of misappropriating company property as a pretext for their real reason for terminating him, which was to lower the costs of health care." Thus, plaintiff argues "a genuine issue of material·fact exists as to the defendants' specific intent to interfere with the plaintiff's rights to benefits under the company-provided group health insurance and the stated reason for his termination was pretextual." (Pl.'s Mem. at 11).

### Section 510 of ERISA

■ Plaintiff's first count is brought under section 510 of ERISA, 29 U.S.C. § 1140, which provides in relevant part:

It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter....

Discharging an employee for the purpose of depriving him of continued participation in a company-provided group health plan is a violation of section 510. *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1243 (7th Cir.1983).

■ "An essential element of plaintiff's proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988). This standard does not require the plaintiff to show that interference with ERISA rights was the sole reason for his discharge, but it does require him to show more than the incidental loss of benefits as a result of a discharge. *Seaman v. Arvida Realty Sales*, 985 F.2d 543, 546 (11th Cir.), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993). Thus, no ERISA cause of action will lie where the loss of benefits was a mere consequence of, but not a motivating factor behind, a termination of employment. *Dister*, 859 F.2d at 1111; *see also Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir.1995), *cert. denied*, 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996); *Economu v.*

*Borg–Warner Corp.,* 662 F.Supp. 1047, 1052 (D.Conn.1986), *aff'd,* 824 F.2d 181 (2d Cir.1987). As one court has noted, without such a requirement, every discharged employee could have a potential claim against his or her employer. *Barbour,* 63 F.3d at 37.

■ Therefore, to avoid summary judgment on a section 510 claim, an employee must show that the employer engaged in prohibited conduct for the purpose of interfering with the employee's attainment of any right to which he may become entitled under an ERISA-protected plan. *Roush v. Weastec, Inc.,* 96 F.3d 840, 845 (6th Cir.1996). The fact that plaintiff received ERISA-protected benefits does not preclude an ERISA claim under section 510. *Id.*

■ Recognizing the difficulty that ERISA plaintiffs may have in proving intent, the Second Circuit has held that the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), presumptions and shifting burdens of production, which were developed in the context of Title VII cases, are equally appropriate in discriminatory discharge cases under section 510 of ERISA. *Dister,* 859 F.2d at 1112. Under *McDonnell Douglas,* plaintiff's first burden is to establish a *prima facie* case of unlawful termination under ERISA. This is a *de minimis* burden and requires only that the plaintiff show that (1) he was entitled to ERISA's protections; (2) that he was qualified for the position; and (3) that he was discharged under circumstances that give rise to an inference of discrimination. *Dister,* 859 F.2d at 1115; *see also Barbour,* 63 F.3d at 38.

■ Defendants have admitted the first two elements. Thus, the only issue is whether plaintiff has produced sufficient evidence to show that he was discharged under circumstances giving rise to an inference of discrimination. We find that defendants' knowledge of plaintiff's significant health problems and his potential transplant surgery, and the timing of his termination are sufficient to give rise to an inference of discrimination for purposes of plaintiff's meeting his *prima facie* burden. *See Dister,* 859 F.2d at 1115 (finding that plaintiff's discharge four months before his pension plan benefits were to vest and the resulting substantial cost-savings to the employer were sufficient to give rise to an inference of discrimination); *Carlos v. White Consol. Indus., Inc.,* 934 F.Supp. 227, 232 (W.D.Tex.1996) (holding that plaintiff's discharge soon after his injury and his request that this be reported to the ERISA plan manager suggested that plaintiff might have been discharged to prevent him from using his medical and health benefits); *Zimmerman v. Sloss Equip., Inc.,* 835 F.Supp. 1283, 1288 (D.Kan.1993) (finding that defendant's firing plaintiff while on she was on medical leave and while her health insurance application was pending raised an inference of discrimination), *aff'd,* 72 F.3d 822 (10th Cir.1995); *but cf. Little v. Cox's Supermarkets,* 71 F.3d 637, 643 (7th Cir.1995) (holding, in circumstances very similar to the instant case, that plaintiff had not carried her *prima facie* burden)[1]; *Mathews*

---

1. The facts of *Little* are remarkably similar to those in the instant case. In *Little,* several coworkers had observed plaintiff stealing items of merchandise from the supermarket, her employer. Plaintiff was discharged for theft. Plaintiff claimed that she was assembling items for purchase later, a practice that the employer allowed of other employees. She also states that her employer was aware that her husband suffered from severe health problems and that the couple relied upon plaintiff's health insurance coverage. She claimed that her discharge violated section 510 of ERISA, pointing to "the pretextual nature of her termination" and her employer's desire to reduce its benefit costs. The Seventh Circuit held that plaintiff had not carried her *prima facie* burden of providing the requisite basis for a rational inference that a discriminatory motive guided her employer's decision to terminate her. 71 F.3d at 642. Although the evidence in the instant case is no stronger than that in *Little,* because of the Second Circuit's emphasis on the *de minimis* burden a plaintiff must carry at the *prima facie* stage, we think that the better

**174**

*v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1166 (8th Cir.1998) (holding that a time lapse of only two months between the exercise of protected rights and plaintiff's discharge did not give rise to an inference of a retaliatory motive under the circumstances of the case).[2] Thus, we find that plaintiff has offered adequate evidence to defeat a motion for summary judgment at the *prima facie* stage. The burden of production now shifts to defendants.

▪To dispel the inference of discrimination, defendants are required to articulate a legitimate, nondiscriminatory reason for the discharge. *Dister*, 859 F.2d at 1115. Defendants state that plaintiff was terminated after employees reported that they had observed plaintiff taking company property and placing it in his own vehicle and after an investigation by defendant Sheades, which revealed that several items of AASI inventory were missing. Although plaintiff has very convincingly refuted defendants' claim that he misappropriated company property, defendants have satisfied their "relatively light" burden. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). As the Supreme Court stated in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the determination that a defendant has met its burden of production at this stage can "involve no credibility assessment." The burden-of-production determination necessarily precedes the credibility assessment stage. *Id.* Thus, we turn to plaintiff's evidence of pretext and defendants' intent to discriminate.

▪ The Second Circuit held that, in accordance with the Supreme Court's holding in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), an employee may satisfy his ultimate burden of proving pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Dister*, 859 F.2d at 1113 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). The only evidence plaintiff has produced is the hearsay statement of his wife that someone in management told her that he had been trying to find new group coverage for AASI but had been turned down by three companies because of plaintiff's health problems, the fact that AASI eventually switched group health plans, and the fact that defendants were aware of plaintiff's health problems.

▪ The evidence offered by plaintiff must, at a minimum, create a genuine issue of material fact. Having carefully reviewed the record and all evidence submitted by plaintiff, we fail to find anything that would create a genuine issue of material fact regarding whether defendants' proffered reason for plaintiff's termination was unworthy of belief or whether defendants were motivated by an intent to discriminate against plaintiff. *See Dister*, 859 F.2d at 1115. Even assuming, as we do here, that plaintiff did not misappropriate company property and that he had been a

approach in this case is to find that plaintiff carried his *prima facie* burden and then address the sufficiency of plaintiff's evidence at the pretext stage. *See Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir.1996) (holding that, where a close question existed as to whether plaintiff had met the third element of his *prima facie* case, and where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, it was proper for the court to consider the third prong of the *McDonnell Douglas* order of proof, that being whether the plaintiff has produced evidence creating an issue of fact as to whether the employer's

proffered non-discriminatory reasons for his discharge were pretextual).

2. The record in *Mathews* revealed that the plaintiff had previously submitted a significant claim for medical benefits and suffered no adverse employment action. Also, his employer had no reason to know that his most recent medical problem would result in his incurring substantial related medical expenses in the future. Further, five other employees had submitted claims in excess of those submitted by plaintiff and were not terminated.

valuable employee, we find nothing in the record that would suggest that the individual defendants who discharged plaintiff did not have a good faith belief that plaintiff had misappropriated company supplies or that this story was fabricated to avoid liability. Defendants may have made a mistake in thinking that plaintiff had stolen company goods, but that, without more, does not lead to the conclusion that they were discharging him in order to be able to obtain less expensive group health coverage. Evidence that an employer made a poor business judgment in discharging an employee is generally insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons. *Dister*, 859 F.2d at 1116.

Moreover, defendant Stanley Sheades, Director of AASI, states in his unrefuted affidavit that at no time during the course of his employment with AASI did he have any involvement in or participate in any decision to select group health insurance providers for AASI. Likewise, defendant Jean Grady, President of AASI, states that at the time of plaintiff's termination, she was not considering replacing AASI's group health insurance with M.D. Health with any other specific health insurance plan provided by any other carrier and that she did not consider the costs to AASI of providing health care insurance to plaintiff nor his medical condition as a basis for terminating his employment. In fact, AASI's Treasurer who was responsible for switching the group health insurance was not hired until after plaintiff's termination.

The hearsay statement offered by plaintiff's wife that someone in management told her that three companies had refused to provide coverage because of plaintiff's health problems is not evidence that this had anything to do with plaintiff's termination. We do not even know whether those in management, who made the decision to terminate plaintiff, were aware of this information. *See Roush*, 96 F.3d at 845 (statements by defendant's human resources manager that plaintiff was a liability to the company (due to excessive absenteeism) were not evidence of defendant's intent to interfere with plaintiff's rights under the company's health benefit plan). Moreover, the fact that AASI later changed group health carriers does not evidence an intent to interfere with plaintiff's use of medical benefits. *See Id.* (holding that the defendant's change in insurance carriers did not evidence an intent to interfere with the plaintiff's use of medical benefits). Plaintiff had already been terminated. Plaintiff was able to continue his COBRA coverage with M.D. Health and with IBC. Assuming that this change in coverage resulted in a cost savings to AASI, the most that this shows is that AASI's new treasurer was interested in saving the company money. It does not show that the company had an intent to derive plaintiff of ERISA benefits.

The scant circumstantial evidence offered by plaintiff amounts to no more than his subjective beliefs and debatable inferences. It certainly is not enough to create a genuine issue of material fact from which a reasonable jury could conclude that defendants' proffered reasons were a mere pretext for discrimination or that defendants' reasons are unworthy of belief.

### CONCLUSION

Accordingly, we GRANT summary judgment to defendants on Count I of plaintiff's complaint. Having dismissed the only federal claim, we decline to exercise supplemental jurisdiction over the remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3), which are dismissed without prejudice. The Clerk is directed to close the file.

**SO ORDERED.**