Shirley DIETELBACH, Plaintiff–
Appellant,

v.

OHIO EDISON COMPANY,
Defendant–Appellee.

No. 99–4245.

United States Court of Appeals,
Sixth Circuit.

Jan. 12, 2001.

Before JONES, BOGGS, and SILER,
Circuit Judges.

PER CURIAM.

Plaintiff Shirley Dietelbach filed suit against her employer, Ohio Edison Company, alleging "disability" discrimination under the Americans with Disabilities Act ("ADA"). The district court granted Ohio Edison's motion for summary judgment because Dietelbach failed to establish a prima facie case of discrimination. Dietelbach appeals that grant of summary judgment. We affirm.

I.  BACKGROUND

Dietelbach began working at Ohio Edison's Niles, Ohio power generating plant in 1964. As of June 1995, she worked as an Electrical Instrument & Test Person ("Electrical I & T–A") at the plant. Many of an Electrical I & T–A's duties, such as splicing cable, performing rigging work, and handling heavy electrical equipment, required substantial use of one's hands.

In October 1995, Dietelbach suffered work-related injuries to both of her thumbs. Because of those injuries, she was later placed on modified light duty and assigned various light duty tasks. Dietelbach did not perform the full duties of her

job or of any job at the plant and, instead, she was given low impact duties that were pulled from other full time workers and assigned to her. Under modified light duty, she performed job demonstrations, worked on recorders, and worked in the lab.

In April 1996, Dr. Stanley Nahigian, a hand surgeon, operated on Dietelbach's right thumb. After her operation, she did not return to work until July 1996. When she returned to work, Dr. Nahigian restricted her activity to "suitable one-handed duty." In August 1996, he further restricted her activity. She could no longer open valves, climb ladders, work on small instruments, lift more than five pounds, and use a small screwdriver or pliers with her right hand. She was permitted to work on small instruments and records and to use a screw driver and pliers—but only with her left hand.

After Dr. Nahigian's August proscriptions on Dietelbach's work activities, Ohio Edison's medical consultant, Dr. Timothy Newman, spoke with Dr. Nahigian about Dietelbach's situation. In a memorandum summarizing his conversation with Dr. Nahigian, Dr. Newman wrote that Dietelbach's August restrictions were to be permanent because her condition would show little or no improvement. Dietelbach's thumb injuries had reached maximum medical improvement. In Dr. Nahigian's opinion, Dietelbach could not perform the routine hand and finger maneuvers necessary for her position as an Electrical I & T–A. Dr. Nahigian said that he would not advise her to return to work as an Electrical I & T–A but that, if she wanted to, he could of course not stop her from doing so.

Based upon the opinions of Drs. Nahigian and Newman, Ohio Edison determined that Dietelbach was unable to perform the duties of any job available at the plant. In December 1996, Ohio Edison informed Dietelbach about early retirement and disability options. She was terminated effective January 1997, and she subsequently filed for and received Social Security disability benefits for her thumb injuries.

After Dietelbach filed suit against Ohio Edison in Ohio state court, it was subsequently removed to federal district court. The district court granted Ohio Edison's motion for summary judgment on the grounds that Dietelbach was unable to show that she had a "disability" under the ADA, and/or because she was not qualified to perform her job.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo. *See Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

## III. DISCUSSION

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). In the absence of direct evidence of disability discrimination, a plaintiff may seek to establish a prima facie case of discrimination and, in fact, has the burden of establishing that prima facie case to overcome summary judgment. *See, e.g., Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810 (6th Cir.1999). The prima facie case that a plaintiff must establish to defeat an employer's motion for summary judgment in an ADA case is

that the plaintiff 1) is an individual with a disability; 2) is qualified to perform the job requirements; and 3) either has been denied reasonable accommodation for her disability, or subjected to an adverse employment decision solely because she is disabled. *See Roush,* 96 F.3d at 843. Summary judgment is properly granted where a plaintiff fails to produce evidence creating a genuine issue of material fact as to any of the essential elements of her prima facie case. *See Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995).

Because we find that Dietelbach was not able to perform the essential functions of her job, we need not reach the issue of whether or not she was "disabled" within the meaning of the ADA.

### Qualified Individual

■ The ADA defines the term "qualified individual with a disability" to mean an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An individual who cannot perform the essential functions of a job is not qualified and, in such cases, the ADA does not come into play. It is irrelevant that the inability to perform essential functions is due entirely to a physical impairment. *See, e.g., McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369 (6th Cir.1997) (holding that an employee's carpal tunnel syndrome prevented her from performing her assembly line job, but that she was not disabled under the ADA).

A disabled employee has the initial burden of proposing an accommodation. *See Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996). But this court has recognized a subcategory of claims "in which the plaintiff is not seeking a reasonable accommodation but is instead making the straightforward claim that he or she can in fact function capably in the ... position as it exists." *Id.* at 1182. In such cases, the plaintiff maintains the burden of establishing that she is qualified for the position in dispute. *See id.* at 1182–83.

The ADA does not require employers to create a new position for a disabled employee who can no longer perform the essential functions of her job. Under the ADA, where an employee is unable to perform the essential functions of her job, termination is lawful. *See, e.g., Smith v. Ameritech,* 129 F.3d 857, 867 (6th Cir. 1997). And where a plaintiff's "own doctor," not the defendant, "has concluded she could not perform her job ... [that plaintiff] cannot establish that she is a 'qualified individual with a disability' under the ADA." *Weigel v. Target Stores,* 122 F.3d 461, 467 (7th Cir.1997).

Dietelbach never proposed an accommodation. Instead, she simply asserted, without proof, that she could perform the tasks of an Electrical I & T–A, an assertion directly contradicted by all medical evidence. The medical opinions of Dietelbach's physician, Dr. Nahigian, and of Ohio Edison's medical consultant, Dr. Newman, were the only evidence presented on the subject of Dietelbach's ability to perform the essential functions of her job. During his deposition, Dr. Nahigian stated that the limits that he placed on her duties in August 1996 were permanent, and that she could only perform light duty work. And Drs. Nahigian and Newman explicitly said that Dietelbach could not perform the essential tasks of an Electrical I & T–A. Specifically, Dr. Nahigian stated that Dietelbach was "done as a factory worker":

> [Dietelbach] cannot do anything that has to have powerful thumbs, powerful grip, repetitive lifting and grasping, certainly nothing that had any kind of pneumatic

tools or any torqueing with heavy screw-driver's [sic] or wrenches, anything that would demand where there would be a lot of strain on her thumbs, strain on her hands. The power is gone. The thumb is 50 percent of her hand and neither one of her thumbs are going to be good enough to do that kind of heavy work.

Job duties performed by an Electrical I & T–A, including splicing cable, repairing equipment, and handling heavy equipment, require that an Electrical I & T–A have full use of her hands and, hence, her thumbs. Dietelbach did not have full use of her hands.

Because Dietelbach failed to establish a genuine issue of material fact as to whether she was qualified to perform the essential functions of an Electrical I & T–A, summary judgment in favor of Ohio Edison was appropriate.

AFFIRMED.