NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0583n.06

No. 11-5738

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

*Jun 06, 2012*

LEONARD GREEN, Clerk

EDITH SUZANNE ALLEN,                              )
                                                 )
    Plaintiff-Appellant,                         )
                                                 )
v.                                               )   ON APPEAL FROM THE UNITED
                                                 )   STATES DISTRICT COURT FOR
BELLSOUTH TELECOMMUNICATIONS, INC.,              )   THE MIDDLE DISTRICT OF
                                                 )   TENNESSEE
    Defendant-Appellee,                          )
                                                 )
                                                 )
AT&T UMBRELLA BENEFIT PLAN NO. 1,                )
                                                 )
    Defendant-Appellee.                          )


Before: BOGGS, NORRIS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Edith Allen alleges that her former employer, BellSouth Telecommunications, violated the Americans With Disabilities Act when it refused to give her paid time off while she suffered a debilitating bout of depression. The district court granted summary judgment to BellSouth. We affirm.

I.

Allen has suffered from depression since 2002. She was able to control her symptoms, however, until early 2008. Around that time, she began to feel physically weak and to have trouble thinking clearly. R. 25, Attach. 5 at 35. Some days she would "cry[] uncontrollably . . . at work." She struggled to do more than answer her email. *Id.* at 35. She also had suicidal thoughts. *Id.* at

117. In February of that year, after BellSouth denied her a day off to take her mother home from the hospital, Allen stopped going to work.

Allen met with Dr. Cynthia Fry, who was the "employee assistance counselor" for BellSouth's parent company, AT&T. *See* R. 23, Attach. 1 at 10. Dr. Fry rated Allen as a "30" on the "Global Assessment Functioning scale," meaning that Allen was unable to "function." *Id.* at 17-18. Thus, Fry referred Allen to Dr. James Lancaster for further evaluation and recommended that Allen "take some time off in order to stabilize." R. 25, Attach. 2. Allen therefore stayed home on medical leave between February 12 and February 20, 2008. *See* R. 5 at 4.

Around the same time, AT&T's Disability Service Center initiated a claim for benefits pursuant to AT&T's disability plan. *See* R. 25, Attach. 2 at SED 0002. Under that plan, Allen was potentially eligible for 26 weeks of "Short Term Disability" benefits if she was "unable to perform all of the essential functions of [her] job," R. 27, Attach. 7 at DIP 0010, "with or without reasonable accommodation," *id.* at DIP 0008. The Service Center wrote to Allen to request that she submit documentation to support her disability claim. R. 25, Attach. 2 at SED 0002.

Thereafter, Allen met with Dr. Lancaster for an evaluation. He concluded that Allen suffered "moderately severe depression" due to the "physical stress and [emotional] stress [of] taking care of her mother" and conflicts at work. R. 25, Attach. 2 at SED 26, 28. Lancaster decided to double Allen's medication and "notify [AT&T] of [Allen's] need for continuation of work leave." *Id.* at SED 28. In a letter to AT&T shortly thereafter, Dr. Lancaster agreed with Dr. Fry's recommendation that "Allen be off from work for treatment of her depression and anxiety." *Id.* at SED 25.

Allen then met with Dr. Van Orden. He, too, concluded that Allen should stay home from work. He explained that she was "emotionally unstable and not competent." *Id.* at SED 0023. Dr. Van Orden faxed his assessment to AT&T on February 28, 2008.

Days later, AT&T denied Allen's claim for Short Term Disability benefits. In a letter, the Disability Service Center pointed to Dr. Van Orden's observation that Allen's "cognitive functioning was intact" and that she was "able to perform activities of daily living." *Id.* at SED 0046-0047. The letter also relied on Dr. Van Orden's admission that he was "unable to determine the extent of [Allen's] impairments based on one office visit." *Id.* at 0047. Thus, the Disability Service Center concluded that the "available medical information does not clearly substantiate significant functional impairment."

Allen appealed the decision but lost. AT&T ordered her to return to work by May 27, 2008. Allen decided to retire instead. R. 25, Attach. 5 at 54. It was not until November or December 2008 that Allen's doctors would say that she could work again. *Id.* at 55.

In the interim, Allen filed a lawsuit in the United States District Court for the Middle District of Tennessee. She alleged that the denial of benefits violated the Employee Retirement Income Security Act, because she qualified for the benefits under the terms of AT&T's disability plan. *See Allen v. AT&T Disability Income Program*, No. 3:08-cv-00884 (M.D. Tenn. Sept. 29, 2008), R. 5 at 2. That district court agreed and awarded Allen the amount of short-term-disability benefits that AT&T owed under the plan. *See id.* at R. 21.

A month after Allen filed that ERISA suit, she also filed a complaint with the Equal Employment Opportunity Commission. She alleged discrimination on the basis of disability because

she had "requested accommodations and they were not provided." R. 5, Attach. 1. But the Commission dismissed her complaint in November 2009. R. 5, Attach. 2.

Allen then filed this suit in January 2010. R. 1. She alleged that the denial of additional medical leave, disability benefits, and "other reasonable accommodations" violated the Americans With Disabilities Act and the Tennessee Human Rights Act. R. 5. The district court concluded that Allen was not "disabled" because her depression was a temporary ailment that Allen eventually controlled with treatment. The court therefore granted summary judgment to the defendants.

Allen appeals the dismissal of her Americans With Disabilities Act claim.

## II.

That Act forbids discrimination against an otherwise capable employee on the basis of the employee's disability. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). "Discrimination" includes a refusal to make "reasonable accommodations" for the employee's disability. *Id.* at 868 (citing 42 U.S.C. § 12112(b)(5)(A)); *see also Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). Thus, to prevail on her claim that BellSouth discriminated against her, Allen must show both that she is disabled and that she requested (and was denied) an accommodation that was reasonable. *Kleiber*, 485 F.3d at 870.

An employee is "disabled" for purposes of the Act if her impairment substantially limits a "'major life activit[y].'" *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106-07 (6th Cir. 2008) (quoting 42 U.S.C. § 12102(2)). Allen argues that her depression counts as a disability under this standard because the depression kept her from working and from caring for

herself—both "major life activities" under the applicable regulations. *See id.* at 1107; R. 25, Attach. 5 at 117.

Yet at the time that AT&T denied Allen's benefits request in 2008, the Supreme Court had narrowly interpreted the definition of "disability" under the then-applicable version of the Act. In *Sutton v. United Air Lines, Inc.*, the Court held that, in order for an impairment to qualify as a disability, the impairment must substantially limit a major life activity even with corrective measures (glasses to improve eyesight, for instance). 527 U.S. 471, 481 (1999); *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198-98 (2002) (stating that an impairment must be "permanent or long term" to be a disability). Accordingly, in *Swanson v. University of Cincinnati*, this court rejected an employee's allegation that his depression was disabling, because his depression improved with medication. 268 F.3d 307, 316 (2001). (*Swanson* arose under an Ohio statute, but the court applied cases interpreting the Americans With Disabilities Act because the "criteria [were] similar." *Id.* at 314.) Here, it is undisputed that Allen's condition improved with treatment and that her doctors released her to return to work in late 2008. Under *Sutton*, then, her depression was not a qualifying disability.

Allen insists that it is irrelevant whether her depression improved after the defendants denied her request for benefits. She points to *Kocsis v. Multi-Care Management, Inc.*, where this court said that a plaintiff who sues under the Americans With Disabilities Act must show that she was disabled "*at the time of the discriminatory act*." 97 F.3d 876, 884 (6th Cir. 1996). But the *Kocsis* court held only that a plaintiff could not claim discrimination on the basis of impairments she suffered after the alleged discrimination. *See id.* at 884 n.13; *see also Swanson*, 268 F.3d at 316 (rejecting Allen's

reading of *Koscis*). Indeed, this court in *Swanson* specifically rejected the argument that evidence of a plaintiff's improvement, after the defendant allegedly fired him due to his depression, was irrelevant in deciding whether the plaintiff suffered a qualifying disability. 268 F.3d at 316. As we noted in *Swanson*, this court has considered such evidence in the past: In *Roush v. Weastec, Inc.*, we held that the plaintiff's kidney condition was not a disability because "there [was] no evidence that this impairment *presently* substantially limits a major life activity." 96 F.3d 840, 844 (6th Cir. 1996) (emphasis added); *see also id.* ("Although plaintiff . . . was substantially limited during [a period of surgeries], this does not necessarily lead to the conclusion that plaintiff presently has a disability"). The court explained that, because the kidney condition improved with surgery after about two years of being unable to work, the condition was merely "temporary," *id.* at 842, 844—which the Supreme Court later confirmed is insufficient to establish that an impairment is a qualifying disability. *See Toyota Motor Mfg.*, 534 U.S. at 198 ("The impairment's impact must also be permanent or long term"). Thus, Allen's post-retirement recovery means that she was never disabled under the Act.

Allen responds that, according to the Commission's compliance manual, a condition may be disabling if it is "long-term, or potentially long-term, in that [its] duration is indefinite." She adds that, according to the compliance manual, "[c]hronic conditions" may be substantially limiting if they "have a high likelihood of recurrence in substantially limiting form." *See* EEOC Compliance Manual, Section 902: Definition of the Term "Disability," http://www.eeoc.gov/policy/ docs/902cm.html (last modified Nov. 21, 2009). But the duration of Allen's depression was definite—it ended in late 2008—and there is no evidence that her depression was expected to be

permanent. *Cf. Guzman-Rosario v. United Parcel Serv.*, 397 F.3d 6, 10 (1st Cir. 2005) (holding that impairments that are "foreseeably temporary" cannot be disabilities); *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 469 (4th Cir. 2002) ("[T]here is no evidence that Pollard's impairment was expected to be permanent or long-term"). Finally, Allen points to no evidence that her debilitating depression is likely to recur. The compliance manual therefore lends no support to Allen's argument that she was disabled.

Allen also argues that the Americans With Disabilities Act Amendments Act of 2008 "clarifie[d]" that the original Act had a more inclusive definition of "disability" than the one courts had adopted. But we have held that the Amendments Act, which took effect on January 1, 2009, does not apply retroactively to allegedly discriminatory acts committed before that date (like the one here). *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). Under the controlling version of the Act, Allen's depression was too short to qualify as a disability.

Moreover, an employee who pursues a failure-to-accommodate claim must show that she proposed a "reasonable" accommodation that her employer denied. *Kleiber*, 485 F.3d at 870. Allen insists that she did request an accommodation by seeking paid leave under AT&T's Short Term Disability plan. That plan authorizes 26 weeks of disabilities benefits. But Allen admits that she did not specify how much time she wanted off (whether it be 26 weeks or even longer, without benefits). During Allen's deposition, an attorney asked her, "When you testified that you were asking just for time off when you had your short-term disability claim, did you ever say specifically how long off you needed?" R. 25, Attach. 5 at 129. Allen responded, "I didn't know. I had an illness." *Id.* Such open-ended, indefinite requests for leave are not requests for reasonable

accommodation. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996);

*Krensavage v. Bayer Corp.*, 314 F. App'x 421, 426 n.1 (3d Cir. 2008) (citing cases). The district

court was correct to enter summary judgment against Allen's discrimination claim.

The district court's judgment is affirmed.