Doyle L. JOHNSON, Plaintiff,

v.

CITY OF MASON, Defendant.

No. C–1–98–756.

United States District Court,
S.D. Ohio,
Western Division.

April 4, 2000.

---

B Randall Roach, Martin McCarty Richman Wright & Roach, Fairborn, OH, for Doyle L Johnson, plaintiff.

Gary Edward Becker, Dinsmore & Shohl–1, Cincinnati, OH, for City of Mason, defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 7); Plaintiff's Response (doc. 13) and Defendant's Reply (doc. 19); as well Plaintiff's Motion to Strike the Affidavit of Lisa Catlett (doc. 17) and Defendant's Response (doc. 22), to which Plaintiff did not Reply. In addition, the Court will also consider in our deliberations Defendant's Addendum/Supplement to its Motion for Summary Judgment (doc. 20), Plaintiff's Errata (doc. 21), and Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment (doc. 26).

## BACKGROUND

On October 8, 1998, Plaintiff Doyle L. Johnson filed a six count Complaint against Defendant City of Mason alleging civil rights violations under the American with Disability Act, Title 42 U.S.C. § 12101, *et seq.*, and the Ohio Civil Rights Act, Ohio Rev.Code § 4112.02, *et seq.*, as well as for violations of state law and public policy (doc. 1). The following facts are, unless otherwise stated, undisputed and were taken from the Complaint (doc. 1), as well as the briefs that were submitted by the Parties (docs. 7, 13 & 19).

Plaintiff began his employment with Defendant's Water Treatment Plant in April of 1995 (doc. 13). At the time Plaintiff was hired by Defendant for the position of Water Treatment Plant Operator, he had no known physical impairments and was in generally good health (*Id.*). In addition, the first eighteen months of Plaintiff's employment with Defendant were unremarkable and included satisfactory performance evaluations and recommendations by his supervisors for a possible promotion (*Id.*).[1] Plaintiff alleges that, "the positive work environment which [he] enjoyed during his eighteen months of employment vanished after he sustained an injury from which he has not yet fully recovered" (*Id.*).

1. At all relevant times herein, Plaintiff was directly supervised by either Ernie Stickler or James Lauver (doc. 1). In addition, Plaintiff's next level of management supervision included, Lisa deGuzman-Catlett, Defendant's Human Resources Director, and Patrick Ibarra, Defendant's Assistant City Manager (*Id.*).

On October 16, 1996, Plaintiff fell while working on the job from an elevated platform that resulted in injuries to his right ankle, knee and foot, and left him allegedly "physically compromised and impaired" (doc. 13). Plaintiff contends that, this "impairment" directly and adversely affected all of Plaintiff's major life activities, but in particular his ability to walk, stand, ambulate, lift, and work (*Id.*). Furthermore, Plaintiff submits that, during the time of his injury and after he returned from medical leave, Plaintiff required a cane or crutch to ambulate and required physical or mechanical assistance for nearly any activities, including shopping and driving (*Id.*). Plaintiff's workman's compensation claim was approved on December 12, 1996, by the Ohio Bureau of Worker's Compensation and he was granted a four month leave of absence by Defendant due to his physical injuries (doc. 1).

In February of 1997, Plaintiff returned to his position with Defendant with medical restrictions limiting or proscribing his work activities, which included: "standing, walking, stooping, bending, lifting, and that [Plaintiff] be assigned a sit down job only" (*Id.*). Plaintiff asserts that, after his return to work, he found himself unexplainably in disfavor among his co-workers and supervisors which was exhibited by their uncooperative, hostile, and inappropriate behavior toward Plaintiff (*Id.*). Moreover, Plaintiff submits that, he was frequently assigned to work in the lab alone and was constantly required to engage in activities that exceeded his work restrictions (doc. 13). For example, Plaintiff contends that, some water treatment tests could be performed from a seated position, but that no operator could conduct all of the tests from a seated position. In addition, Plaintiff complains that, he was given little or no assistance to complete the numerous tests that were assigned to him (*Id.*).

On May 14, 1997 and on June 16, 1997, Plaintiff asserts that, disciplinary action was initiated against him for solely pre-textual and discriminatory reasons that were allegedly due to his disability and his deteriorating relationship with his co-workers and supervisors (*Id.*). Shortly thereafter, Plaintiff sought intervention with the Ohio Civil Rights Commission (hereinafter, the "OCRC") and the Equal Employment Opportunity Commission (hereinafter, the "EEOC") by initiating a complaint and investigation against Defendant for the allegedly "illegal and intolerable conduct" that Plaintiff was being subjected to because of his disability (*Id.*)

Plaintiff further alleges that, after the OCRC and EEOC initiated their investigation, Defendant subjected Plaintiff to retaliatory and disparate treatment during the his remaining period of employment with Defendant (doc. 1). This conduct was typified by allegedly subjecting Plaintiff to more rigorous performance standards than other like members of Plaintiff's department. Plaintiff asserts that, Defendant engaged in many examples of discriminatory or disparate treatment because of his disability, such as: (1) refusing to extend the same employment benefits offered to other employees of Defendant on like terms and conditions; (2) refusing to curtail harassing conduct exhibited by co-workers; and (3) refusing to consider Plaintiff's grievances on the same terms and conditions as grievance filed by other employees of Defendant (*Id.*).

Plaintiff also alleges that, the hostility that was directed toward him was not limited to his co-workers, but also involved his immediate and upper level supervisors (doc. 1). For instance, Plaintiff asserts that, prior to his injury and return to work, Defendant agreed to allow Plaintiff the opportunity to attend classes in order to obtain a Master's degree at Wright State University, and further assisted Plaintiff by allowing him to work a flexible schedule with reimbursement of tuition (*Id.*). However, after the OCRC notified Defendant that it would be investigating charges of disability discrimination, Plaintiff contends that in July of 1997, Defen-

dant notified him that he would no longer be reimbursed any expenses related to his education/certification because of his alleged "unsatisfactory performance" (*Id.*).

On August 7, 1997, a meeting occurred at the local Teamsters office relative to Plaintiff's pending grievances against Defendant. Plaintiff's grievances were filed pursuant to a Collective Bargaining Agreement (hereinafter, the "CBA") (doc. 13). Plaintiff submits that, at this meeting, he was told by upper level supervisors that his grievances would not be heard until Plaintiff dismissed his pending OCRC charges against Defendant (*Id.*). Plaintiff maintains that, the meeting was subsequently terminated when Plaintiff refused (*Id.*). Sometime in August of 1997, Plaintiff submits that he applied for a position with allegedly "lesser pay and inferior benefits with Warren County," in order to have employment available to him in the event Defendant terminated him (*Id.*). Plaintiff asserts that, it was his intention to continue in the employment of Defendant by having the disciplinary actions that were taken against him remedied, and by having his work restrictions meaningfully addressed through his superiors (*Id.*). However, according to Plaintiff, due to the alleged demands of the Assistant City Manager that Plaintiff withdraw his OCRC as a "quid pro quo" for the consideration of his grievances, Plaintiff alleges that, he was "constructively forced" to terminate his employment with Defendant as of September 17, 1997 (*Id.*).

Plaintiff further asserts that, he has exhausted all of his administrative remedies that are required by law and has received notice from the EEOC of his right-to-sue no later than ninety days from July 9, 1998 (doc. 1). After obtaining a right-to-sue letter from the EEOC, Plaintiff filed the instant action on October 8, 1998, alleging violations of the Americans with Disabilities Act (hereinafter, the "ADA"), Title 42 U.S.C. § 12101, *et seq.*, and parallel provisions in the Ohio law (*Id.*). Plaintiff also filed additional claims for intentional infliction of emotional distress and negligent supervision (*Id.*). On December 7, 1998, Defendant filed its Answer denying Plaintiff's substantive charges and asserting a total of thirteen affirmative defenses in order to counter Plaintiff's five-count Complaint (doc. 3). Defendant filed its Motion for Summary Judgment on July 8, 1999, and maintains no genuine issues of material fact exist which prevent this Court from rendering a judgment as a matter of law (doc. 7). Shortly thereafter, Plaintiff submitted his Response (doc. 13), followed by Defendant's Reply (doc. 19). The Court finds Defendant's Motion for Summary Judgment (doc. 7) is now ripe for our determination.

In addition, on December 28, 1999, Plaintiff filed a Motion to Strike the Affidavit or Lisa Catlett (doc. 17), followed by Defendant's Response (doc. 22), to which Plaintiff did not file a Reply. In his Motion to Strike, Plaintiff offers three arguments in support of his Motion: (1) certain testimony of the Affidavit is not based on personal knowledge; (2) the Affidavit contains inadmissible hearsay; and (3) certain testimony in the Affidavit is allegedly contradicted by Ms Catlett's subsequent deposition testimony (doc. 17).

Having reviewed this matter, the Court finds that, the Affidavit complies with the requirements of Rule 56 of the Federal Rule of Civil Procedure.[2] Furthermore, the Court will view all of the admissible and relevant evidence that is presented by the Parties in a light that is favorable to Plaintiff's view of the facts, in accordance with Rule 56. Accordingly, Plaintiff's Mo-

---

**2.** Rule 56 provides, in pertinent part, the following:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R.Civ.P. 56(e).

tion to Strike the Affidavit of Lisa Catlett is hereby DENIED (*see* doc. 17).

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino*, 980 F.2d at 405.

As the Supreme Court stated in *Celotex*, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Guarino*, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino*, 980 F.2d at 405 (quoting *InterRoyal Corp.*

*v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

### I. *Defendant's Motion for Summary Judgment (doc. 7).*

#### A. *Count IV: Disability Discrimination Under The ADA*

##### 1. *Disability*

Plaintiff contends that, he was forced to resign from his position as Water Treatment Operator because of his "disability." Plaintiff alleges that, his disability resulted from injuries to his right leg or the effects thereof, as well as a limited ability to walk, stand, ambulate, lift, and work. In addition, Plaintiff submits that, Defendant also treated and designated Plaintiff as one with a disability as well. Defendant maintains that, Plaintiff does not suffer from a disability, was nonetheless reasonably accommodated, and was not constructively discharged.

■ The ADA provides that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (West 1999). The purpose of the ADA is to allow qualified individuals with disabilities to participate in the workplace on an equal level with non-disabled

persons. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178–79 (6th Cir. 1996). The term "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Discrimination, under the ADA also includes the "denying [of] employment opportunities to [a]n ... employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B) (West 1999); *see also Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir.1996). The threshold issue before the Court is whether Plaintiff is a qualified individual under the ADA.

To prevail on his ADA claim, therefore, Plaintiff must prove that: (1) he has a disability; (2) he was qualified for the job; and (3) that he either was denied a reasonable accommodation for his disability or was subject to an adverse employment decision that was made solely because of his disability. *See Roush*, 96 F.3d at 843; *see also Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir.1996); *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995). Thus, an ADA plaintiff must initially satisfy two requirements to establish a prima facie case of discrimination. A Plaintiff must have an impairment, and the impairment must interfere with a major life activity. *See Farmer v. National City Corp.*, No. C–2–94–966, 1996 WL 887478, *5 (S.D.Ohio April 5, 1996); *see also Zatarain v. WDSU–Television, Inc.*, 881 F.Supp. 240, 242 (E.D.La.1995).

Plaintiff first argues that, he was "disabled" within the meaning of the ADA, or in the alternative, that Defendant regard-ed him as having such an impairment. Therefore, we must consider the question of whether a genuine issue of material fact exists in relation to whether Plaintiff was truly "disabled," within the meaning of the ADA.

The ADA defines a "disability" to include, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A) (West 1999). Courts are guided by the Code of Federal Regulations (hereinafter, the "C.F.R.") in interpreting the ADA. The regulations define "physical or mental impairment" as: "Any physiological disorder, or condition ... affecting one or more of the following body systems ..., including the musculoskeletal [and] neurological systems." 29 C.F.R. § 1630.2(h)(1) (West 1999). "Major life activities" include: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (West 1999); *see also Roush*, 96 F.3d at 843.

Additionally, the EEOC has defined "substantially limits" to mean:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (West 1999). Finally, the EEOC has established the following factors to be considered in determining whether an individual's major life activity is substantially limited: "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)

(West 1999). Generally, short-term temporary restrictions are not substantially limiting. *See Roush,* 96 F.3d at 843; *see also Hamm v. Runyon,* 51 F.3d 721, 725–26 (7th Cir.1995).

■ Applying these definitions to the case at bar, the Court finds that, Plaintiff's right leg injury and resulting limitations do not constitute a disability within the meaning of the ADA. *See, e.g., Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir.1997) (finding that "moderate difficulty or the pain experienced while walking does not rise to the level of a disability," under the ADA); *Roush,* 96 F.3d at 844 ("We conclude, as did the District Court, that plaintiff's kidney condition does not constitute a disability within the meaning of the ADA."); *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999) (finding that plaintiff's inability to walk as a result of a deformed leg did not rise to the level of a substantial impairment under the ADA); *Kelly v. Drexel Univ.,* 94 F.3d 102, 108–109 (3rd Cir.1996) (finding that plaintiff's fractured hip, leaving him with a noticeable limp and severe post-traumatic degenerative joint disease in his right hip, did not substantially limit the major life activity of walking); *Farmer,* 1996 WL 887478, at *6 ("[Plaintiff] has failed to identify any 'major life activity' which has been affected by either the cancer or the resulting impotence or incontinence."); *Horth v. General Dynamics Land Sys., Inc.,* 960 F.Supp. 873, 878 (M.D.Pa.1997) (finding that a plaintiff with a leg injury and work restrictions has failed to prove that his limitations were significantly limited).

■ We do not doubt that Plaintiff suffered from a leg injury and a resulting physical impairment. *See* 29 C.F.R. § 1630.2(h)(1). However, the inquiry does not end there. Plaintiff must also establish that his impairment substantially limited a "major life activity," as defined by the ADA. The regulations describe the types of activities that must be affected in order to qualify as a "major life activity." *See* 29 C.F.R. § 1630.2(i). Under the ADA, "[i]ntermittent, episodic impairments are not disabilities." *Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 544 (7th Cir.1995). Moreover, there is insufficient evidence in the record to suggests that Plaintiff's condition was especially severe or that its impact on his walking would be permanently debilitating. Many impairments do not impact an individual's life to the degree that they constitute a "disability." *See* 29 C.F.R. § 1630.2(j). Based on the evidence that is now before this Court, we find that Plaintiff has not demonstrated that he has a disability or that Defendant regarded him as one with a disability, as defined by the ADA, for several reasons.

■ First, there has been little or no showing that Plaintiff's injury to his leg is any more than a limited or temporary impairment. In fact, Plaintiff started a new job with Warren County, with similar duties as he had with Defendant, just one week after he resigned from employment with Defendant. Second, Plaintiff only claims to walk with a cane on a limited basis and suffers pain only after extended walking and standing. This hardly rises to the level of a disability as defined by the ADA, and there is insufficient evidence to prove that Defendant ever regarded Plaintiff as having a disability, as defined by the ADA. Just because an employer honors an employee's medical restrictions for his assignment to light duty, does not necessarily infer that the employer believes that employee is "disabled." The employer may be simply trying to work with its employee during the period of his or her injury, no more and no less.

After reviewing all of the facts that have been presented by the Parties, the Court finds that the nature and severity of Plaintiff's condition did not substantially limit Plaintiff's ability to walk and to use his right leg. As a matter of law, we conclude that, Plaintiff's injury does not qualify as a disability under federal law. Thus, Plaintiff presents no genuine issue of material

fact as to whether his major life activity of working is substantially impaired.

### 2. *Reasonable Accommodation*

 The Court finds that, even if Plaintiff was found to be "disabled" within the meaning of the federal statutes, we also find that Plaintiff was reasonably accommodated by Defendant. *See Monette,* 90 F.3d at 1180 (finding that a plaintiff must prove that he is qualified to perform the essential functions of the job in question, either with or without a reasonable accommodation from the employer). In determining whether an accommodation is reasonable, the employer must consider: (1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee. *Keever v. City of Middletown,* 145 F.3d 809, 812 (6th Cir.1998); *see also* 29 C.F.R. § 1630.9.

When Plaintiff was first injured in October of 1996, Defendant placed Plaintiff on four months medical leave. Immediately after his return to work, Defendant accommodated Plaintiff's work restrictions by providing him with a light duty in the laboratory.[3] The Court finds that, the light duty assignment effectively and reasonably addressed Plaintiff's work restrictions. He was no longer required to walk around the water treatment plant collecting samples and was assigned work that did not require Plaintiff being on his feet for more than one hour a day. In addition, Plaintiff was permitted to remain in the laboratory, did not have to climb stairs. In addition Plaintiff was able to perform most of the testing procedures while seated, and was allowed to continue his tuition-reimbursed classes up to and until the summer semester of 1997.

Plaintiff's doctor confirmed that, Plaintiff was able to perform all the laboratory procedures that he was assigned to upon his return from disability. Moreover, Plaintiff's supervisors continuously engaged in a verbal and written dialogue with Plaintiff about accommodating his work restrictions, as well as informing Plaintiff about their expectations in relation to his work performance. Accordingly, even if Plaintiff was deemed disabled, we conclude that, under the circumstances, Defendant provided reasonable accommodations toward Plaintiff.

### 3. *Discrimination*

The general rule against discrimination under the ADA is set forth in 42 U.S.C. § 12112(a), which provides, in pertinent part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (West 1999).[4]

 Even if the Court were to find that, Plaintiff had a disability that was not reasonably accommodated, as defined by the ADA statute, this Court would nonetheless conclude that, Plaintiff has submitted insufficient evidence. to prove that he was singled out for unfavorable or discriminatory treatment because of his alleged disability. When the evidence presented by Plaintiff is viewed in a light that is most favorable to Plaintiff, this Court finds that

---

**3.** The Court notes that, the Parties appear to be in agreement that the relevant work restrictions that were put in place by Dr. Stephen Dailey, Plaintiff's orthopedic physician, consisted of the following: no standing for more than one hour per day, no stooping, no bending, no crouching, no twisting, no climbing ladders or stairs, and no repetitive motions (*see* docs. 7, 13 & 19).

**4.** There is no dispute between the Parties that, Defendants are "covered entities," as defined by the Act. *Id.*

the facts before us involve no more than personality conflicts between Plaintiff and his co-workers and supervisors. *See Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 688 (8th Cir.1998) (affirming summary judgment for defendant on plaintiff's ADA hostile work environment claim because there was no evidence that "numerous incidents of friction between [plaintiff] and his co-workers" were due to his disabilities); *see also; Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 965 (8th Cir. 1999) (affirming summary judgment in a sexual harassment case because cursing, yelling, and "rude and snotty" behavior was not based on plaintiff's sex); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986) ("Personality animosity is not the equivalent of sex discrimination and is not proscribed by Title VII.").

The fact that these "personality conflicts" allegedly intensified once Plaintiff returned from his disability leave does not, by itself, raise a genuine issue of material fact as to Plaintiff's claims of disability discrimination. The Court concludes that, Plaintiff has failed to produce sufficient evidence to overcome Defendant's Motion for Summary Judgment in relation to Count Four, therefore, Plaintiff's claim for disability discrimination under the ADA is hereby DISMISSED.

## B. *Counts I & II:Wrongful, Hostile and Retaliatory Discharge*

### 1. *Wrongful Discharge*

Plaintiff asserts a claim for wrongful discharge against Defendant in violation of federal and state public policy. Specifically, Plaintiff alleges that, he was subjected to adverse employment action by Defendant due to an actual or perceived disability in violation of the ADA and the Ohio Rev.Code § 4112.02, as well as for engaging in statutorily protected activities recognized under the ADA. Furthermore, Plaintiff contends that, he was subjected to a hostile work environment in violation of the ADA.

Ohio continues to recognize the employment-at-will doctrine. *See Peterson v. Scott Constr. Co.*, 5 Ohio App.3d 203, 205, 451 N.E.2d 1236, 1239 (1982) (finding that an employee who is hired for an indefinite term and without a contract is an employee-at-will, and either party may end the relationship at any time, and for any, or for no reason at all). In *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 234, 551 N.E.2d 981, 986 (1990), the Ohio Supreme Court recognized an employment tort in instances where an employee is discharged or disciplined for a reason prohibited by a statute. In order for an at-will employee to bring a wrongful discharge suit, the complaint must allege the violation of a "clear public policy." *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 150–51, 677 N.E.2d 308, 321–22 (1997). Public policy can be found in many sources such as a statute, the Constitutions of the United States and a state's legislation, administrative rules and regulations, as well as the common law. *Painter v. Graley*, 70 Ohio St.3d 377, 384, 639 N.E.2d 51, 56 (1994).

However, this Court finds that, Plaintiff has presented insufficient evidence to demonstrate that a genuine issue of material fact exists in relation to his claim of wrongful discharge under the ADA and Ohio law. Having already concluded that Plaintiff was not disabled. was not discriminated against and was reasonably accommodated within the meaning of the ADA, we also do not find that Plaintiff was wrongfully discharged by Defendant.

After a review of all of the facts presented by the Parties, the Court concludes that, Plaintiff voluntarily resigned in September of 1997. There were probably several reasons for Plaintiff's resignation, none of which proves wrongful discharge. First, Plaintiff may have resigned because he was tired of his job and the personality conflicts that was associated with it. Second, Plaintiff may have subjectively believed that he was no longer appreciated, welcomed, or supported at the water treat-

ment plant by his co-workers and/or superiors. Third, Plaintiff concedes that, he had applied for a position with Warren County, though for allegedly lesser pay and benefits, several weeks before he handed in his resignation to Defendant. Accordingly, we conclude that, there was no violation of the alleged public policy tort on the part of Defendant, and, therefore, Plaintiff cannot state a claim for wrongful discharge.

### 2. Hostile Work Environment

In addition, Plaintiff's hostile work environment and constructive discharge claims must fail as well. *See Keever,* 145 F.3d at 813 (affirming summary judgment for defendant on plaintiff's claims that he was subjected to a hostile work environment and harassed because of his disability and disability-related absences). To maintain a claim for constructive discharge, Plaintiff must show that, "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quoting *Easter v. Jeep Corp.,* 750 F.2d 520, 522–23 (6th Cir.1984)). Plaintiff's subjective perceptions that, Defendant did not accommodate his work restrictions, there was hostility by his co-workers and supervisors and his grievances were denied for ulterior motives, do not support his claim that he was forced to resign. *See Garcia v. ANR Freight Sys., Inc.,* 942 F.Supp. 351, 359 (N.D.Ohio 1996) (describing plaintiff's claim as one for constructive wrongful discharge, and finding that, plaintiff failed to produce evidence that a reasonable person would find her working conditions so intolerable that she would be compelled to resign).

The Court finds that, Plaintiff's constructive discharge claim fails for several reasons. First, as set forth above, Plaintiff cannot establish that he was disabled under the ADA. Second, the incidents upon which Plaintiff relies upon do not involve disability-based harassment.

The ADA does not prohibit all verbal or physical harassment in the workplace. Rather, the ADA is directed only at discrimination because of a disability. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (addressing same sex sexual harassment under Title VII); *see also Faragher v. Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (same). Third, Defendant made numerous efforts to address the grievances that were filed by Plaintiff through the CBA that the City of Mason workers had with Defendant. Defendant and Plaintiff made good faith attempts to negotiate and resolve his grievances, his OCRC charges, and his increasing disciplinary problems at work. Fourth, when those efforts failed, Plaintiff chose not to pursue the next step, applied for another job, and voluntarily resigned the next month due to apparent dissatisfaction with his current situation. Upon resignation, Plaintiff accepted the job offer of Warren County, a position he had applied for nearly one month earlier.

Moreover, we find that, the incidents upon which Plaintiff relies are at worst inappropriate and suggest a poor relationship between Plaintiff and his co-workers, and between Plaintiff and his supervisors. However, these incidents do not indicate discrimination on the basis of an alleged injury. None of the incidents of verbal abuse by his co-workers upon which Plaintiff rely are necessarily related to Plaintiff's injuries. At most, the incidents involve immature behavior, personality conflicts, favoritism, etc., and, such incidents, do not create a cause of action for disability-based harassment. Therefore, this Court concludes that, there is insufficient evidence to support Plaintiff's claim that he was constructively discharged in retaliation for filing a charge with the OCRC.

Accordingly, we find no genuine issues of material fact that prevent this Court from concluding as a matter of law that Plaintiff voluntarily resigned and was not

constructively discharge because of a hostile work environment.

### 3. *Retaliatory Discharge*

▮▮▮▮▮▮ Plaintiff additionally argues that, his "termination" was in retaliation against him for filing a discrimination complaint with the OCRC. Such a discharge would violate 29 C.F.R. § 1630.12(a) (West 1999) and the Ohio Rev.Code § 4112.02 (West 1999), which prohibit discrimination: "against any individual because that individual has opposed any act or practice made unlawful by this part or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce any provision contained in this part." *Id.* To recover for retaliatory discharge, a plaintiff must show that: "(1) he engaged in an activity protected by Title VII; (2) this exercise of his protected civil rights was known to defendant; (3) defendant thereafter took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990) (citing *Wrenn v. Gould,* 808 F.2d 493, 501 (6th Cir.1987)); *see also, Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982); *Chandler v. Empire Chem., Inc.,* 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954 (1994) (recognizing that "federal law provides the applicable analysis for reviewing retaliation claims"). An employer may violate the statute by retaliating against an employee for a protected activity even though the individual is not actually disabled. *See Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. 37, 52 (D.Me.1996) (holding that an employee may state a claim under the ADA even though that employee is found not to be "disabled" as defined by the ADA).

▮▮▮▮ Plaintiff alleges that, he was forced to resign because of the adverse employment actions taken by Defendant in retaliation for his filing a claim with the OCRC. Specifically, Plaintiff asserts that, his supervisors would not agree to resolve his grievances unless and until Plaintiff dropped his OCRC complaint. In addition, Plaintiff submits that, Defendant denied his reasonable request for tuition reimbursement, a flexible schedule, additional assistance in the laboratory, and was treated differently than other employees in similarly situated positions.

After a review of all of the facts presented by the Parties, the Court finds that, Plaintiff has presented insufficient evidence that genuine issue of material fact exists in relation to his retaliatory discharge claim for several reasons. First, Defendant has presented evidence to the Court of several detailed disciplinary memoranda outlining Plaintiff's work deficiencies, and offering Plaintiff guidance on how to improve his performance in the future. Second, Defendant documented and informed Plaintiff of several legitimate and non-discriminatory reasons as to why it would no longer reimburse Plaintiff's outside education. Third, Defendant did assign a second person to the laboratory in order to assist Plaintiff in his work while he was assigned to light duty.[5] Fourth, while it is true that Defendant and Plaintiff discussed the option of resolving Plaintiff's grievances if he would drop his OCRC charges, Plaintiff suffered no adverse employment action as a result of those negotiations.

▮▮▮▮ Indeed, the evidence shows that Plaintiff had Union representation, pursuant to the CBA, and Plaintiff had the option to pursue his grievances to subsequent stages of the grievance procedure under the CBA. Nonetheless, shortly after the negotiations ended, Plaintiff decided not to pursue his grievances, found similar employment with Warren County, and resigned shortly thereafter. Fifth, although

---

5. Sometime during the summer of 1997, Defendant assigned an employee named Larry Jordan to assist Plaintiff with his duties in the lab (doc. 13).

Plaintiff's requests to receive educational assistance for the summer of 1997 was denied as a result of his alleged poor work performance, Plaintiff was informed by Defendant that he could apply again at a later time once his job performance had improved. *See Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991) (finding that an employee has an obligation to act reasonably by not assuming the worst and not jumping to conclusions too quickly); *see also Sandra Breeding v. Arthur Gallagher & Co.*, 164 F.3d 1151, 1159–60 (8th Cir.1999) ("The working atmosphere was not ideal, but a 'feeling of being unfairly criticized or [having to endure] difficult or unpleasant working conditions' are not so intolerable so as to compel a reasonable person to resign."). We conclude that, these facts do not support a claim for retaliation.

Furthermore, Plaintiff offers no probative evidence of retaliatory discharge. Instead, he relies upon circumstantial evidence that his superiors were unhappy with the discrimination complaint, that his fellow employees knew that his superiors did not like him, and that his superiors wanted to get rid of him. Plaintiff's evidence, even if taken as true, is inadequate to establish causation. Accordingly, this Court finds that, Plaintiff's retaliatory discharge claim fails as a matter of law, and Defendant is entitled to summary judgment. The Court hereby DISMISSES Counts I and II of Plaintiff's Complaint (doc. 1).

### C. Counts III, V & VI: Ohio Disability Act & Tort Law Claim

Plaintiff has included in his Complaint three pendent Ohio law causes of action: (1) Count III is filed under the Ohio Disability Discrimination Act, (2) Count V is the state law tort of intentional infliction of emotional distress, and (3) Count VI is the state law tort of negligent supervision (*see* doc. 1). Having already concluded that, Plaintiff's federal claims are without merit, this Court DECLINES to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, the Court hereby DISMISSES WITHOUT PREJUDICE Counts III, V and VI of the Complaint (doc. 1).

### D. The Court's Summary

To survive a motion for summary judgment, Plaintiff must provide enough evidence on which a reasonable jury could find for him. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. A reviewing court must view the evidence in a light that is most favorable to the non-moving party. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Having reviewed the affidavits, deposition testimony, briefs, exhibits, and all other materials furnished in support and in opposition to Defendant's Motion for Summary Judgment (doc. 7), the Court hereby DECLARES that there are no genuine issues of material facts as to the federal claims set forth above. Consequently, the Court hereby GRANTS–IN–PART Defendant's Motion for Summary Judgment (doc. 7), in regards to Counts I, II & IV only.

### CONCLUSION

For the reasons set forth above, the Court holds that: (1) Plaintiff's Motion to Strike the Affidavit of Lisa Catlett (doc. 17) is hereby DENIED; (2) Defendant's Motion for Summary Judgment (doc. 7) is hereby GRANTED–IN–PART in regards to Plaintiff's federal claims only, and, thus, Counts I, II & IV of the Complaint are hereby DISMISSED WITH PREJUDICE; and (3) COUNTS III, V & VI of the Complaint are hereby DISMISSED WITHOUT PREJUDICE.

Accordingly, this Court DISMISSES the federal claims and DECLINES to accept supplemental jurisdiction over Plaintiff's state law claims (*see* doc. 1). In addition, for the reasons set forth above, the Court hereby VACATES the Final Pretrial Conference schedule for April 11, 2000, and

the Trial scheduled for May 22, 2000 (*see* doc. 25).

SO ORDERED.