**Michael J. MULHOLLAND, Plaintiff–Appellant,**

v.

**PHARMACIA & UPJOHN, INC., Defendant–Appellee.**

No. 01–1325.

United States Court of Appeals, Sixth Circuit.

Nov. 22, 2002.

642

Before RYAN and BOGGS, Circuit Judges; and HAYNES, District Judge.*

PER CURIAM.

Michael Mulholland appeals the grant of-summary judgment to defendant Pharmacia & Upjohn, Inc. (Pharmacia) in this ADA and state-law employment action for failure to accommodate his mental disability. 42 U.S.C. § 12101 *et seq.;* M.C.L.A. § 37.1101 *et seq;* Mulholland was fired for falsifying his timecards by overstating the amount of time that he worked. Mulholland claims that he requires written instructions for all tasks, because of a traumatic brain injury that allegedly prevents him from learning new tasks. Because Mulholland cannot show that Pharmacia failed to provide him with written instructions regarding the correct completion of his timecard, we affirm the grant of summary judgment.

I

Mulholland began work for Pharmacia in 1980 as a janitor. In 1981, Mulholland became a laboratory animal technician; he cared for the animal subjects of laboratory testing. In 1987, Mulholland was promoted to the position of biochem technician. In that capacity, he observed and cared for laboratory animals, including primates, for research on a Pharmacia hair-growth product.

On June 15, 1992, Mulholland suffered a traumatic brain injury when he fell from the roof of his house and landed on his head. The injury left him with cognitive

* The Honorable William J. Haynes, United States District Judge for the Middle District of Tennessee, sitting by designation.

impairments, reduced short-term memory, reduced forward-looking problem-solving capacity, and other mental problems. Mulholland spent two months in the hospital, and several more in rehabilitation. In all, Mulholland was on paid leave from Pharmacia for a year. During that year, a Pharmacia nurse worked with Mulholland and his care providers in determining how Mulholland could return to work with Pharmacia.

In October 1993, Mulholland resumed active employment at Pharmacia. The hair-growth experiments were over, so the biochem tech position originally filled by Mulholland was no longer available. However, Mulholland was re-employed as a laboratory animal technician at his previous biochem tech salary and benefits. Mulholland asserts that research positions were in fact available, and argues that other biochem techs in his group were reassigned to such positions.

Upon his return to work, the outpatient team assigned to monitor Mulholland's recovery indicated that because of his mental difficulties, he should be provided instructions in writing for complex tasks. When Mulholland returned to work, his group manager, Bob Hren, instructed Mulholland's group leader to provide him with extra guidance and supervision. Although not performed expressly for Mulholland's benefit, work instructions for the lab techs were written on an office chalkboard. Mulholland copied these instructions down on a sheet of paper, to which he often referred as he performed his tasks. Mulholland performed his job well, and over three years, the level of supervision that he required lessened. Mulholland's mental state improved as well; he began taking classes at a local community college, and wrote several letters to Pharmacia management, asking for a position that included a more active role in research.

The current dispute between the parties was the result of Mulholland's falsification of timecards. Timecards were due on Fridays. Employees listed the amount of time worked during the preceding week, and estimated the amount of time that they would work over the upcoming Saturday and Sunday. Mulholland consistently returned timecards that showed that he had worked eight hours a day for the preceding week, and estimated five hours a day for the weekend days.

In October 1996, one of Mulholland's supervisors, Tom Block, noticed that Mulholland arrived to work late, took long lunch breaks, and left work early. Block told Mulholland to correct his timecard. Block also referred the matter to human resources. After this meeting, Mulholland requested vacation time for Monday mornings, because he expected to be late due to his wife's new work schedule, and also correctly estimated his weekend work time at around three hours per day.

As a byproduct of the human resources investigation into Mulholland's weekday time, Block and Sue Charron, a human resources manager, discovered that Mulholland had been falsifying his weekend overtime. By comparison with card-reader ingress and egress records, Block and Charron found that Mulholland had been working two or three hours on Saturdays and Sundays, but had been claiming five hours per day for those days. He had not corrected the difference between his predicted time and time actually worked.

Charron and Block confronted Mulholland with these discrepancies. Mulholland blamed his mental condition for the errors. He claimed that he forgot to correct his timecard with regards to Saturdays and Sundays because by Monday he had already forgotten what hours he had worked. Similarly, he claimed that he entered eight hours each day for the week

regardless of the time actually worked, because he had forgotten the appropriate amount. Pharmacia fired Mulholland at the end of the meeting.

Mulholland sued, charging that Pharmacia had failed to reasonably accommodate him under the ADA, 42 U.S.C. § 12112(b)(5)(A), and its Michigan analogues, M.C.L.A. §§ 37.1102(2) and 37.1210(18), and that such a failure to accommodate constituted impermissible discrimination in employment. Mulholland did not bring a wrongful termination claim in his complaint.

Pharmacia moved for summary judgment; the district court granted the motion, holding (1) that Mulholland was not "disabled" within the statutory definition of the term, and (2) that Mulholland failed to produce evidence creating a genuine issue of material fact as to whether the instructions for filling out timecards were adequate. Mulholland timely appealed.

## II

We review a grant of summary judgment, and the underlying determination as to whether or not a genuine issue of material fact exists, *de novo*. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### 1. Timeliness of the Motion for Summary Judgment

Mulholland argues that the grant of summary judgment was premature, because he had not received sufficient discovery to argue against the motion. The district court concluded, properly, that a party who wishes to oppose summary judgment on grounds of insufficient discovery must file a Fed.R.Civ.P. 56(f) affidavit detailing what further discovery would show. *See, e.g., Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir.1995). Because Mulholland did not comply with Rule 56(f), the district court was correct to reject Mulholland's argument.

### 2. Disability Under the ADA

In order to establish a *prima facie* case for disability discrimination, a plaintiff must show: (1) that he is disabled; (2) that he is qualified for the job; and (3) that he was denied a reasonable accommodation for his disability or was subject to an adverse employment decision based solely on his disability. *Roush v. Weastec, Inc.*, 96 F.3d 840 (6th Cir.1996).

The ADA defines a disability as (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A), (B), (C). The Supreme Court, in *Toyota Motor Mfg. Ky., Inc., v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), held that to be "substantially limited in a major life activity, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, *learning*, and working." 29 C.F.R. § 1630.2(i) (emphasis added). *Toyota* requires that the substantial limitation apply to the entire range of the life activity, not merely to one

sub-class of that activity. *Toyota*, 534 U.S. at 197–98. Because medical diagnoses can describe a wide range of people with differing levels of actual impairment, a court must make an individualized assessment that the plaintiff is actually impaired. *Id.* at 198–99. Following this framework, Mulholland's cognitive dysfunctions, especially his short-term memory loss, are impairments. The question is whether or not these dysfunctions substantially impair a major life activity. Mulholland asserts that he is impaired in learning, thinking, and working. He also claims that he has trouble concentrating, insofar as it affects each of these major life activities. Learning is clearly a major life activity, 29 C.F.R. § 1630.2(i), and so we base our analysis of Mulholland's impairment on the degree to which it impairs his ability to learn.

Mulholland relies on several reports that indicate that he suffers from significant memory problems. In a 1992 report following his release from the hospital, his treating physician, Dr. Robert Kreitsch, reported that Mulholland had memory dysfunction and difficulties with planning and problem solving. Mulholland had an especially difficult time with learning complex tasks.

In a 1993 report, Dr. Jeffrey Kaylor, a psychologist, indicated that Mulholland's short term memory and capacity for new learning fell within the moderate-to-severe impairment range. Kaylor also noted that Mulholland's speech was affected by "word-finding deficits." However, the Kaylor report indicates that Mulholland's IQ was average, and his abstract reasoning fell within the normal range.

A 1994 report, by Dr. Thomas Van Den Abell, a neuropsychologist, found that Mulholland had slight difficulty in learning, but did not experience "rapid decay" of recently acquired information. The Van Den Abell report showed that Mulholland performed normally on nonverbal memory skills. Dr. Van Den Abell reported that Mulholland had made some recovery in his cognitive functions. While his verbal memory was "moderately impaired," he did not suffer "rapid forgetfulness."

Finally, an April 12, 1995 report compiled by the Charles Van Riper Language, Speech, and Hearing Clinic showed that Mulholland has "persisting problems with new learning, retrieval, recall, and problem solving / logical reasoning." Mulholland also provided performance reviews that indicated that he suffered from absent-mindedness, and that he should use lists to help him with memory problems.

The district court concluded that Mulholland failed to present sufficient evidence to create a genuine issue of material fact that his impairment significantly restricted the life activities of learning, thinking, or working. Although the court noted that Mulholland's mental functions had been impacted by the accident, the court determined that Mulholland did not raise a genuine issue of material fact as to whether or not Mulholland's activities were significantly restricted as a result of the damage.

Although it is true that a condition does not qualify automatically as a disability simply because it is medically diagnosed or treatable, *Toyota*, 534 U.S. at 198–99, Mulholland's medical evidence, together with performance reviews indicating that he had significant problems learning and remembering to do tasks, and the reports regarding his rehabilitation while at the hospital do raise a genuine issue of material fact as to whether he is disabled under the ADA. While Pharmacia raises a legitimate question as to Mulholland's current ability to learn and remember tasks, it does no more. Furthermore, even if Mulholland were not currently disabled, he had a record of being disabled, and Phar-

macia's own internal memoranda indicate that he was *perceived* as disabled, both of which are sufficient under the ADA for a finding of disability. If we view the evidence in the light most favorable to Mulholland, we must conclude that he suffered a traumatic brain injury that directly affects his memory and problem-solving skills, and that the brain injury has substantially impacted his ability to think and learn.

■ The district court relied on *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) to hold that Mulholland was not disabled because he was able to perform his job almost as well as the average member of the population. This conclusion is incongruous. The operative thesis of the ADA is that discrimination against an employee who can perform his job functions with reasonable accommodation is impermissible. The fact that Mulholland was able, by dint of increased supervision and written instructions, to overcome his impairment and perform his work in a generally satisfactory manner does not contravene his evidence indicating that he had a disability.[1]

The district court's analysis concluded by examining a series of letters and reports that indicated that Mulholland still had considerable capacity to learn and remember.[2] The district court also relied heavily on Dr. Van Den Abell's conclusion that Mulholland "would be able to perform his job at his previous level of competence with the exception of problem-solving skills in unique situations." However, this report also found Mulholland's learning curve to be depressed, and the later Van Riper study found that Mulholland had "persisting problems with new learning, retrieval, recall and problem solving...." Further, Mulholland presented other evidence that substantiates his claim of an impairment substantially affecting his ability to learn and remember tasks. The record shows that Mulholland required increased supervision at work, because he routinely forgot certain tasks. He relied on written instructions and lists to help him remember his tasks. His supervisors complained of his absent-mindedness, and double-checked his work. This evidence raises a genuine issue of material fact as to whether or not his cognitive dysfunction substantially impaired his ability to think or learn.

1. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), notes that an employee who is able to *correct* an impairment (for example, a nearsighted person wearing glasses) is not disabled under the Act. This rule occasionally conflicts with a central tenet of the Act: that a disabled individual who is able to perform his work when provided a reasonable accommodation is protected by the Act. In this case Mulholland argues that he was denied written instructions on how to fill out his timecards. His ability to correct for his cognitive dysfunction by the use of written instructions is irrelevant if, as he alleges, such instructions were denied him. As we note below, written instructions were in fact provided to Mulholland. Rather than address the complicated and unclear issue as to whether the presence of written instructions renders Mulholland not disabled under the ADA, we rely on the fact that there was no failure of accommodation in making our decision to affirm the district court's grant of summary judgment.

2. There is some discussion in the district court's opinion, and significant time devoted in the briefs, to letters written by Mulholland seeking a more research-oriented position at Pharmacia. Mulholland pointed out in the letters that he was able to perform his current work, that he remembered his former duties as a biochem tech at Pharmacia, and that he had been taking Community College classes in an effort to improve his qualifications for a research position. These letters are aspirational, and indicate, at most, that Mulholland believed that he could perform his work despite his disability.

A plaintiff seeking to show that he is disabled may also argue that he is disabled from "working." 29 C.F.R. § 1630.2(j)(3)(i). This is a much more difficult showing to make, because the plaintiff must not show merely that he was disabled from a single job, but rather that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Ibid.* Courts consider the geographical area, the number of jobs making use of the plaintiff's skills (class of jobs), and the number of jobs that the plaintiff could perform (broad range of jobs). 29 C.F.R. § 1630.2(j)(3). A plaintiff is not disabled because he cannot perform a specific job, if other jobs making use of his qualifications are available. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

Here, the district court was correct in determining that Mulholland was not disabled from the life activity of "working." Mulholland did not provide any information showing that he was precluded from working in either his class of jobs, or a broad range of jobs in various classes. We reject the argument that Mulholland is disabled from a class or broad range of jobs because he was not given his prior research position. Mulholland's impairment does not prevent him from working, even in his chosen profession: he is in fact currently employed with one of Pharmacia's competitors.

We conclude that Mulholland has raised a genuine issue of material fact as to whether or not he suffers from an impairment that substantially impacts his ability to think and learn. The reports and performance evaluations consistently state that Mulholland has short-term memory dysfunction, and that his ability to learn and problem-solve is significantly im-

paired. The fact that Mulholland can work despite this impairment is not conclusive. However, the district court's judgment rested on multiple grounds, on which we choose to affirm, as discussed below.

## 3. Failure to Accommodate

"The ADA requires covered entities, including private employers, to provide 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship.' " *Toyota,* 534 U.S. at 193, *quoting* 42 U.S.C. § 12112(b)(5)(A). Mulholland charges that Pharmacia failed to provide him with a reasonable accommodation, in the form of written instructions regarding the proper way to fill out timecards. In order for an employer to be held liable for failing to accommodate an employee, the employer must be aware of the need for the accommodation. *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 635 (6th Cir.1998).

Pharmacia argues that no accommodation was formally requested upon Mulholland's return from work. The record indicates, however, that Pharmacia was aware both of the disability, and the measures required to accommodate Mulholland. The outpatient team (including an Upjohn nurse) that supervised Mulholland's recovery indicated that he had "better performance when instructions are in writing." A number of Pharmacia memoranda indicate that Pharmacia not only knew about Mulholland's disability, but of the fact that he required written instructions to function. One e-mail states, for example, that "written instructions ... would be helpful" for Mulholland; another indicates that "[h]e is known to depend on specific directions, procedures and lists etc. to keep tasks organized."

■ However, Mulholland's claim fails because the timecards *did* have written instructions regarding how time was to be recorded: time worked, or not worked, was to be recorded to the nearest ⅒oth of an hour. Mulholland disobeyed these instructions, and reported more time than he actually worked. Further, he seems to have expressly recorded "start and stop" times for Saturday and Sunday, indicating that he started work at 5:00 AM and stopped at 10:00 AM. This degree of specificity belies Mulholland's argument that he could not remember with particularity the hours worked.

Mulholland argued before the district court that he forgot to correct his weekend estimation of time because of short-term memory problems due to his traumatic brain injury. The more sophisticated version of his argument, which he presents on appeal, is that he should have been given written instructions as to the proper means of correcting a timecard once an incorrect amount had been entered, and that he should have received written instructions on how to forecast weekend overtime. This is a challenge to the adequacy of the accommodation, rather than its existence. However, because the record shows that Mulholland needed no additional accommodation, beyond the written instructions on the timecards, we reject this argument.

As the district court noted, the parties agree that after Mulholland's confrontation with Block, and before Mulholland had been questioned by human resources regarding his weekend time, Mulholland correctly entered three hours for Saturday and Sunday. Similarly, after his discussion with Block, Mulholland requested leave time to cover his late arrivals on Monday mornings, due to a change in his wife's work schedule. He was clearly able to remember his conversation with Block, and forecast his time for that weekend

correctly. His actions after his meeting with Block demonstrated that he needed no further accommodation, beyond the written instructions on the cards, in order to fill out the cards correctly or to correct them. Further, Mulholland states in the record that after his meeting with Block, he in fact corrected his timecard and used vacation time to compensate for the time that he had mis-stated on the cards.

We conclude that there is no genuine issue of material fact as to whether Mulholland received adequate written instructions on how to report time. We therefore affirm the district court's judgment that Mulholland failed to raise a genuine issue of material fact as to a failed accommodation.

### 4. Discriminatory Discharge

Mulholland also claims, on appeal, that he should have been allowed to show that Pharmacia violated the ADA by discharging him because of his disability. However, he did not include a wrongful termination or discriminatory discharge claim in his complaint. The district court correctly noted that a plaintiff has the opportunity to amend his complaint by means of filing a motion for leave to amend, setting forth the substance of the proposed amendment. Fed.R.Civ.P. 7(b)(1); *see, e.g., Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir.1999).

Mulholland notes that his complaint was filed *in propria persona*, and therefore argues that we should construe his failure-to-accommodate claim to include a claim for wrongful discharge. However, Mulholland had the aid of an attorney in drafting his complaint, and during discovery. There is no reason to excuse his failure to move to amend his complaint.

### III

Although the district court erred in determining that Mulholland had not raised a

genuine issue of material fact as to whether he was substantially impaired in his ability to learn, we nevertheless affirm the grant of summary judgment against Mulholland, because he has failed to raise a genuine issue of material fact as to any failure of accommodation with respect to the reporting of time.

RYAN, Circuit Judge, concurring.

While I agree with the majority that Mulholland can be classified as disabled under 42 U.S.C. § 12102(2)(C), and that Pharmacia ultimately provided a reasonable accommodation, I write separately because I disagree that Mulholland can also be classified as disabled under § 12102(2)(A).

To be classified as disabled under § 12102(2)(A), an individual must show that he or she has "a physical or mental impairment that *substantially limits* one or more of the major life activities. . . ." § 12102(2)(A) (emphasis added). The majority concludes that Mulholland "suffered a traumatic brain injury that directly affects his memory and problem-solving skills, and that the brain injury has *substantially impacted* his ability to think and learn." Maj. op. at 646 (emphasis added). I respectfully disagree.

The term "substantially limits," is not defined in the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. § 12101–12213. *See* 42 U.S.C. § 12102. The Equal Employment Opportunity Commission (EEOC), however, has defined "substantially limited" as meaning " '[u]nable to perform a major life activity that the average person in the general population can perform' "; or " '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major

life activity.' " *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002) (quoting 29 C.F.R. § 1630.2(j) (2001)); *see Black v. Roadway Express, Inc.*, 297 F.3d 445, 447 (6th Cir.2002).

In *Williams*, the United States Supreme Court added that substantial "suggests '*considerable*' or '*to a large degree*,' " 122 S.Ct. at 691 (emphasis added) (citation omitted), and defined "substantially limited" as "an impairment that *prevents* or *severely restricts* [an] individual from [engaging in a major life activity]," *id.* (emphasis added) (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii) (2001)). *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The *Williams* Court continued:

It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] *in terms of their own experience . . .* is substantial."

*Williams*, 122 S.Ct. at 691–92 (emphasis added) (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)).

In *Williams*, the claimant alleged that she was substantially limited in the major life activity of performing manual tasks. *Id.* at 693. The Court held that the proper inquiry for determining whether a claimant is disabled under § 12102(2)(A) is "whether the claimant is unable to perform the variety of tasks central to most people's daily lives, *not* whether the claimant is unable to perform the tasks associated with her specific job." *Id.* (emphasis added). Courts, therefore, should treat as relevant, evidence of an individual's abili-

ties outside of the workplace to accomplish the major life activity alleged to be substantially limited. *See id.*; *see also Black*, 297 F.3d at 451.

I believe the majority incorrectly analyzes whether Mulholland is disabled under § 12102(2)(A), because it focuses almost exclusively on Mulholland's limitations in the workplace, and discounts evidence of Mulholland's ability to think, learn, and function outside the workplace. *See Williams*, 122 S.Ct. at 693. I find it highly relevant in determining Mulholland's disability status that, prior to his discharge, he was taking college courses at Kalamazoo Valley Community College, studying to obtain his certification from the American Association for Laboratory Animal Sciences, and, post-discharge, has maintained a full-time job–all of which unquestionably require thinking and learning.

Although Mulholland certainly experiences some limitations as a result of his head injury, in light of the evidence of his ability to think and learn, at a sophisticated level, outside of the workplace, I do not believe a jury could properly conclude that his limitations "amount to such *severe restrictions* in [his ability to think and learn] that [is] of central importance to most people's daily lives that they establish a ... disability," as contemplated by § 12102(2)(A). *Id.* at 694 (emphasis added).

I, nevertheless, join the majority's conclusion to affirm the grant of summary judgment because I agree that Mulholland can be classified as disabled under § 12102(2)(C), and that Pharmacia ultimately provided a reasonable accommodation.